IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and THE STATE OF ILLINOIS, *ex rel.* PCTLS, LLC, <br><br> Plaintiffs, <br> v. <br><br> NORTHWESTERN MEMORIAL HEALTHCARE d/b/a NORTHWESTERN MEDICINE; and CONNANCE, INC. <br><br> Defendants. | No. 19-cv-00593 <br><br> Judge John F. Kness |

**MEMORANDUM OPINION AND ORDER**

Plaintiff-Relator PCTLS, LLC sued Defendants Northwestern Memorial Healthcare and Connance, Inc. on behalf of the United States of America and the State of Illinois in a qui tam action alleging a multi-million-dollar fraud on U.S. taxpayers in violation of the False Claims Act, Anti-Kickback Statute, and Illinois Insurance Claims Fraud Prevention Act. (Dkt. 1.) Plaintiff asserts that Northwestern engaged in five principal fraudulent schemes beginning in 2006, generally resulting in privately insured patients receiving discounts on services. (*Id.* ¶ 2.) Plaintiff also asserts that Connance provided information to Northwestern that Northwestern then used in the alleged fraudulent schemes. (*Id.* ¶ 15.) Plaintiff seeks treble damages, civil penalties, and attorneys' fees and costs. (*Id.* ¶ 6.)

Presently before the Court are Defendants' motions to dismiss under Rule 12 of the Federal Rules of Civil Procedure. (Dkt. 29; Dkt. 32.) Because Plaintiff, as

Case: 1:19-cv-00593 Document #: 58 Filed: 09/29/23 Page 2 of 17 PageID #:353

explained below, fails to state a claim for which relief could be granted under the heightened requirements for pleading claims involving fraud, the Motions to Dismiss are granted without prejudice and with leave to replead.

I.   BACKGROUND

Plaintiff PCTLS, LLC is a limited liability company acting on behalf of the United States of America and State of Illinois. (Dkt. 1 at ¶¶ 12–13.) Defendant Northwestern Memorial Healthcare is the sole corporate member of Central DuPage Hospital Association, which operates the medical testing facility HealthLab.[1] (Dkt. 1 ¶¶ 14, 35; Dkt. 33 at 4.) Defendant Connance, Inc. is a technology company that purportedly uses a proprietary algorithm and publicly available information to estimate patients' ability to pay medical bills. (Dkt. 1 ¶ 15.)

Plaintiff alleges that Northwestern's practice of waiving or discounting patient co-payments is an unlawful kickback scheme. (*Id.* ¶ 16.) Plaintiff alleges that one of the "principal purposes behind co-payment and deductible requirements is to make patients conscious of the expense of their medical services, and thereby discourage the ordering and performance of unnecessary medical services." (*Id.* ¶ 25.) Plaintiff further alleges that Northwestern discounts or waives insurance co-payments or

---

[1] Northwestern contends that it is an improper defendant, and that Plaintiff's failure to allege a basis for its liability for Central DuPage Hospital Association's conduct is reason enough to dismiss the Complaint. (Dkt. 33 at 8.) Another judge in this District previously granted a motion to dismiss when a plaintiff attempted to sue a parent corporation for its subsidiary's FCA/IFCA violations. *United States v. Am. at Home Healthcare and Nursing Servs., Ltd.*, 2018 WL 319319, at *3 (N.D. Ill. Jan. 8, 2018). Failure to plead facts such that the "court may properly pierce the parent's corporate veil" may lead to dismissal. *Id.* But because the Court grants the motion to dismiss on other grounds, it will assume for present purposes that Northwestern is a proper defendant in this case.

deductibles as part of a scheme to make their medical offices more appealing. (*Id.* ¶ 26.) Plaintiff asserts that such patient-friendly practices induce physicians to order additional and unnecessary tests. (*Id.* ¶ 27.)

Plaintiff also alleges that Northwestern's fraudulent activity is perpetrated through its subsidiary, HealthLab. HealthLab is an outpatient reference laboratory that serves physicians and physician groups throughout Illinois. (*Id.* ¶ 35.) HealthLab performs clinical laboratory services including analyses of human body specimens (such as blood). (*Id.*) HealthLab performs those clinical laboratory services for physicians, clinics, and hospitals on behalf of patients insured by federal Medicare, state Medicaid, and private insurance companies. (*Id.*) Plaintiff alleges that Healthlab is operated as, and thus bills at the higher rates of, a hospital laboratory. (*Id.* ¶¶ 37–39.) But although HealthLab bills out at high rates, Plaintiff alleges HealthLab deeply discounts charges to privately insured individuals that otherwise would use a different lab. (*Id.* ¶¶ 40–43.)

In its Complaint, Plaintiff alleges that five HealthLab practices are or were fraudulent. First, Northwestern routinely waived patient co-payments and deductibles from 2006 to 2013. (*Id.* ¶¶ 45–49.) Second, from 2014–2016, Northwestern allegedly capped privately insured patients' co-payments at $25 to $45 based on the patients' presumed household income as calculated by Connance. (*Id.* ¶¶ 50–55.) Northwestern called this its "presumptive charity" program. (*Id.* ¶ 51.) Third, from 2016 through the present, Northwestern modified its payment pricing process to extend deductible discounts of up to 96.5%. (*Id.* ¶¶ 56–59.) Fourth,

3

HealthLab provided physician clients with rates on laboratory tests far below what the physician receives from payers. (*Id.* ¶¶ 63–65.) And fifth, some number of tests billed by HealthLab occurred in downtown Chicago rather than at Central Dupage Hospital. (*Id.* ¶¶ 66–68.) Plaintiff alleges that these schemes violate the False Claims Act (FCA) (Counts I to IV)[2] and the Illinois Insurance Fraud and Prevention Act (Count V).

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff "must give enough details about the subject-matter of the case to present a story that holds together." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010)). The required level of "factual specificity rises with the complexity of the claim." *Id.* at 616–17.

Allegations brought under the FCA are subject to the heightened pleading standard set forth in Rule 9(b) of the Federal Rules of Civil Procedure. *See United States ex rel. Nedza v. Am. Imaging Mgmt., Inc.*, 2019 WL 1426013, at *5 (N.D. Ill. Mar. 29, 2019) (citing *Thulin v. Shopko Stores Operating Co.*, 771 F.3d 994, 1000 (7th

---

[2] Plaintiff's separate claims for relief, called "Counts" in this opinion, are referred to as "Causes of Action" in the Complaint.

Cir. 2014)). Rule 9(b) requires that claimants alleging fraud "state with particularity the circumstances constituting fraud." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011). This particularity standard requires a relator to plead the "who, what, when, where, and how" of the circumstances relating to the alleged fraud. *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007).

Specifically, in the context of alleged False Claims Act violations, plaintiffs "must link specific allegations of fraud to claims for government payment." *Mason v. Medline Indus., Inc.*, 2009 WL] 1438096, at *2 (N.D. Ill. May 22, 2009) (citing *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003)). Plaintiffs must "use some . . . means of injecting precision and some measure of substantiation into their allegations of fraud." *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016) (quoting 2 James Wm. Moore et al., MOORE'S FEDERAL PRACTICE § 9.03[1][b], at 9–22 (3d ed. 2015)). To do so, "the Relator must provide at least some representative examples of false claims for reimbursement." *United States ex rel. Swift v. DeliverCareRx, Inc.*, 2015 WL 10521636, at *4 (N.D. Ill. Oct. 26, 2015) (collecting cases).[3]

---

[3] Plaintiff argues that FCA claims may have a relatively "relaxed [pleading] standard" as compared to other claims of fraud. (Dkt. 36 at 3–4 (quoting *Suarez*, 2019 WL 4749967, at *12 (N.D. Ill. 2019)). The FCA's relaxed pleading standard is met, Plaintiff contends, when the relator cannot allege "a specific document or bill," but "the alleged facts necessarily led one to the conclusion that the defendant had presented claims to the Government." *Presser*, 836 F.3d at 777–778. Plaintiff stretches *Suarez* too far. Numerous cases in the Court of Appeals and district courts have consistently required a heightened pleading standard in FCA cases, which includes the necessity of a Plaintiff to provide specific examples of false claims. *See, e.g., Grenadyor,* 772 F.3d at 1107; *see also Berkowitz,* 896 F.3d at 841 (requiring "specific facts

In evaluating a motion to dismiss under Rule 12(b)(6), the Court must accept as true the complaint's factual allegations and draw reasonable inferences in Plaintiff's favor. *Id.* But the Court need not apply the "presumption of truth" to "legal conclusions and conclusory allegations merely reciting the elements of the claim." *Id.*

## III. DISCUSSION

It is undisputed that the FCA "is a fraud prevention statute" that safeguards against "cheat[ing] the federal government" out of public money. *United States ex rel. Lamers v. City of Green Bay*, 168 F.3d 1013, 1020 (7th Cir. 1999). The Act imposes liability on an entity that "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" (a presentment claim), or one who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim" (a records claim). 31 U.S.C. § 3729(a)(1)(A)–(B). To state either type of claim, a relator "must allege the following essential elements with particularity: '(1) the defendant made a statement in order to receive money from the government; (2) the statement was false; and (3) the defendant knew the statement was false.'" *Berkowitz*, 896 F.3d at 840 (quoting *United States ex rel. Gross v. AIDS Research Alliance–Chicago*, 415 F.3d 601, 604 (7th Cir. 2005)). As explained below, Plaintiff's Complaint, as it stands now, fails to meet that pleading standard.

---

demonstrating what occurred at the individualized transactional level for each defendant"); *DeliverCareRx*, 2015 WL 10521636 at *4 (collecting cases).

6

### A. Plaintiff Fails to State a Claim Against Connance

Plaintiff fails to allege facts sufficient to state a claim against Defendant Connance. Plaintiff raises five causes of action against Connance: presentment of false claims (Dkt. 1 at Ct. I, ¶¶ 69–73), use of false records or statements (*id.* at Ct. II, ¶¶ 74–78), retention of overpayments (*id.* at Ct. III, ¶¶ 79–82), conspiracy to violate the FCA (*id.* at Ct. IV, ¶¶ 83–86), and violation of the Illinois Insurance Claims Frauds Prevention Act (*id.* at Ct. V, ¶¶ 87–95). Plaintiff's Complaint fails to assert sufficient facts to establish Connance's allegedly fraudulent conduct. Accordingly, the Complaint does not meet the Rule 9(b) pleading standard, and the facts that are alleged fail to demonstrate a plausible FCA claim.

  i. Rule 9(b)

Plaintiff's 95-paragraph Complaint mentions Connance in exactly three paragraphs, and in those paragraphs Plaintiff fails to allege wrongdoing with the particularity required by Rule 9(b). First, Plaintiff explains that Connance is a corporation that "purports to use a proprietary algorithm and publicly available information to estimate patients' 'propensity to pay [their medical bills].'" (Dkt. 1 ¶ 15.) Plaintiff states without further elaboration that Connance "knows there is no legitimate relationship between its estimation of patients' 'propensity to pay' and Northwestern's discounts and waivers of co-payments and deductibles." (*Id.*) Later in the Complaint, Plaintiff alleges that Northwestern relies on presumed household income "as calculated by Defendant Connance" to determine how much privately insured patients should pay. (*Id.* ¶ 50.) Finally, Plaintiff contends that Northwestern

7

capped co-pays and deductibles on a presumptive basis "using an algorithm developed by defendant Connance." (*Id.* ¶ 51.)

Those brief mentions of Connance in the Complaint fail to allege Rule 9(b)'s "who, what, when, where, and how" of the circumstances relating to the alleged fraud. *Borsellino*, 477 F.3d at 507. Plaintiff fails to identify the "who"—the individuals that purportedly submitted wrongful claims to Medicare or any other Government program, or the specific patients for whom false claims were submitted. *See United States ex rel. Hilliard v. Hardin House Inc.*, 2020 WL 362796, at *2 (N.D. Ill. Jan. 22, 2020) (finding the relator's allegations inadequate because she failed to identify "any particular person that may have submitted false or fraudulent claims"). Moreover, Plaintiff fails to identify the "when"—there are no alleged dates concerning when the allegedly fraudulent activity occurred beyond the initial "presumptive charity" program beginning in 2014. (Dkt. 1 ¶ 50.) And Plaintiff fails to identify the "where"— Plaintiff fails to plead any "places from which or to which such misrepresentations were submitted or made." *United States ex rel. Raymer v. Univ. of Chi. Hosps.*, 2006 WL 516577, at *11 (N.D. Ill. Feb. 28, 2006); *see Hilliard*, 2020 WL 362796, at *2.

FCA plaintiffs must also provide representative examples of the fraudulent claims alleged in their complaints. *See DeliverCareRX*, 2015 WL 10521636 at *4. Plaintiff does not provide the Court with any such representative examples. A plaintiff-relator alleging false claims in the medical context should be able to address specific questions: "which patients? And which claims? And which claims or other documents show defendants falsely certified their compliance with federal law? These

8

questions are absolutely essential to relator's claim of fraud." *Peterson v. Cmty. Gen. Hosp.*, 2003 WL 262515, at *2 (N.D. Ill. Feb. 7, 2003).

In Plaintiff's response to Defendants' motion to dismiss, Plaintiff alleges that "[Northwestern] and Connance worked together to disguise kickbacks that [Northwestern] used to procure *all* of its clinical laboratory business." (*Id.* at 8–9.) But the Complaint fails to allege sufficient facts to support that assertion. Alleging that Connance caused submissions of false claims by Northwestern in its response to the motion to dismiss, without explaining how or why in the Complaint, is conclusory and therefore insufficient. (*Id.* at 12.) In sum, Plaintiff fails to meet the Rule 9(b) pleading standard.

        ii.        Elements of an FCA claim

Plaintiff fails to allege that Connance's acts meet any of the elements of the FCA. Nowhere in the Complaint does Plaintiff allege that "(1) [Connance] made a statement in order to receive money from the government; (2) the statement was false; and (3) [Connance] knew the statement was false.' " *Berkowitz*, 896 F.3d at 840. Without alleging any elements of the FCA, Plaintiff's claims under that statute must be dismissed.

Plaintiff faces similar issues in failing to plead a FCA conspiracy claim. To adequately plead an FCA conspiracy claim, a plaintiff "must allege (1) that the defendants had an agreement to defraud the government by getting a false or fraudulent claim allowed or paid; and (2) that the defendants did so for the purpose of obtaining or aiding to obtain payment from the government or approval of a claim

9

against the government." *Suarez*, 2019 WL 4749967, at *15 (cleaned up). An FCA "conspiracy charge must be pleaded with the same specificity as a fraud claim." *Singer v. Progressive Care, SC*, 202 F. Supp. 3d 815, 828 (N.D. Ill. 2016) (dismissing an FCA conspiracy claim as being inadequately pled).

Plaintiff alleges the existence of a contractual relationship between Connance and Northwestern, but the assertion that that relationship constitutes a conspiracy with intent to defraud the government is conclusory and lacks the requisite supporting facts. (*See* Dkt. 1 ¶¶ 15, 83–86.) The Complaint does not explain which individuals entered the conspiracy, when the conspiracy was formed, any actions taken in furtherance of the conspiracy, or the object of the conspiracy. *See, e.g.*, *Suarez*, 2019 WL 4749967, at *15. For that reason, Plaintiff's conspiracy claim must also be dismissed.

Accordingly, Claims I–IV against Defendant Connance are dismissed.

### B. Plaintiff Fails to State a Claim Against Northwestern

Plaintiff's claims under the FCA against Defendant Northwestern fail for similar reasons.

#### i. No representative examples

As explained above, Plaintiff's Complaint fails to provide any representative examples of false claims submitted by the Defendants for reimbursement. Plaintiff's FCA claims therefore fail.

      ii.      Anti-Kickback Statute Violations

Plaintiff also fails to allege facts sufficient to establish a violation of the Anti-Kickback statute. When a plaintiff premises an FCA allegation on violation of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b), it must also allege with particularity each element of an Anti-Kickback Statute violation—that the defendant "(1) knowingly and willfully; (2) offered, paid, solicited, or received; (3) remuneration; (4) in return for purchasing or ordering any item or service for which payment may be made under a federal healthcare program." *United States ex rel. Young v. Suburban Homes Physicians*, 2017 WL 6625940, at *2 (N.D. Ill. 2017).

To start, Plaintiff's Complaint alleges that the various discounting and copay waiver schemes only apply to privately insured patients. (Dkt. 1 ¶¶ 2, 45, 50, 56.) As privately insured patients are not insured by any federal healthcare program, there is no potential for a false claim on those patients' behalf. Indeed, the waivers offered to privately insured patients are independent of Medicare and Illinois Medicaid's obligations to pay for any services. Although most Medicare services are paid on a fee schedule that requires a copay, co-payments and deductibles "do not apply to services paid under the Medicare clinical laboratory fee schedule." CMS, *Clinical Laboratory Fee Schedule* (Jan. 2, 2020), perma.cc/Q282-YW5L. And, for Medicaid, there are "no participant copayments for laboratory services." Ill. DHFS, *Provider Notice* (Mar. 13, 2020), perma.cc/Y5CD-TLJA. As Northwestern's policies have no potential impact on the costs paid by the Government, there is no basis for a False Claim to be submitted.

Plaintiff, again, does not identify in the Complaint any specific false claim that has been submitted.

Plaintiff fails to allege facts that plausibly could establish the elements of a claim under the Anti-Kickback Statute. First, Plaintiff fails to allege the required scienter. The Anti-Kickback Statute requires that any violation must be "knowing[] and willful[]." 42 U.S.C. § 1320a-7b(b)(1) and (2). That means the defendant "intended to engage in conduct that he knew was wrongful." *Suarez*, 2019 WL 4749967, at *13. Indeed, the FCA requires before liability can attach that a person "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" to the Government. *Universal Health Servs. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 1996 (2016) (quoting 31 U.S.C. § 3729(a)). That is a "rigorous" requirement. *Id.* at 2002; *see United States v. Safeway Inc.*, 2020 WL 3132397, at *14–19 (C.D. Ill. 2020).

The Complaint fails to allege any false or fraudulent claim presented to the Government. That deficiency extends to Northwestern's *intent* to knowingly present such a claim to the Government. Neither the Complaint nor Plaintiff's response to Defendants' motion to dismiss refutes Northwestern's contention that it engaged in an "objectively reasonable interpretation of the law" to support its conduct. *Safeway*, 2020 WL 3132397, at *17. Coupled with the lack of any alleged false claim on behalf of any patient or individual, Plaintiff fails to plead a claim under the False Claim Act's.

Plaintiff also fails to sufficiently allege remuneration. In the context of "the Anti-Kickback Statute, courts use 'fair market value' as the gauge of value when assessing the remuneration element of the offense"; accordingly, the plaintiff cannot show "remuneration—something of value—without comparing the contracted [discounted] rates with fair market value." *Klaczak v. Consol. Med. Transp.*, 458 F. Supp. 2d 622, 678–79 (N.D. Ill. 2006). Plaintiff offers no allegations comparing the rates HealthLab charges clients to fair market value. *See* (Dkt. 1 ¶¶ 63–65). *Klaczak* explained that a relator cannot rest on the amount "billed Medicare" because CMS's unilateral setting of that rate is not equivalent to fair market value. 458 F. Supp. 2d at 678–79. Instead, Plaintiff had to allege how the relevant transaction—the sale of tests—was not consummated at fair market value. The Complaint fails to do so.

In addition, Plaintiff's interpretation of the term "remuneration" in the Anti-Kickback statute is overly broad. As an example of illegal kickbacks, Plaintiff relies on a 1994 Office of Inspector General Special Fraud Alert that cites laboratories' waiver of charges to providers for lab tests. (Dkt. 36 at 6; Dkt. 1 ¶ 17.) Plaintiff asserts that capping and waiving *patient* copayments and deductibles provides value to *physicians* in violation of the Anti-Kickback statute. (Dkt. 36 at 7.) That abstract interpretation of remuneration is, however, strays far from the more prosaic purpose of the statute: stopping healthcare providers from receiving illegal kickbacks. None of Plaintiff's cited legal theories support the claim that a copay waiver is illegal remuneration to physicians—instead, and as with the OIG report, the potential for illegal remuneration lies with the patient. OIG Special Fraud Alert

13

(Dec. 19, 1994); *see* (Dkt. 1 ¶¶ 16–28); *see also Grenadyor*, 772 F.3d at 1106–07 (assuming a copay waiver could be a *patient* kickback but affirming dismissal under Rule 9(b)). "Remuneration" demands the transfer of something with "substantial independent value" to the physician. *Suarez*, 2019 WL 4749967, at *6–10; *see also* OIG Advisory Op. 12-20, 2012 WL 7148096 (Dec. 12, 2012). Just as the hiring of ambassadors to assist patients in physician's offices did not constitute "remuneration" in *Suarez*, programs to aid patients with copays do not constitute illegal remuneration here. 2019 WL 4749967, at *6–10.

Plaintiff's cited authorities are factually too distinct from the present case to change this analysis. In *United States v. Berkeley Heartlab, Inc.*, for example, the alleged kickback arrangement at issue involved directly paying physicians in a scheme that implicated a federal healthcare program. 225 F. Supp. 3d 487, 496 (D.S.C. 2016). And the arrangement in *United States ex rel. Riedel v. Boston Heart Diagnostics Corporation* involved conditioning copay waivers on physician referrals as a scheme "to gain additional Medicare business." 332 F. Supp. 3d 48, 67–68 (D.D.C. 2018). This case, on the other hand, involves alleged waivers of co-payments for patients covered by private insurance—a markedly distinct alleged scheme. Plaintiff's allegations invoking the Anti-Kickback Statute therefore fail to set forth a viable claim.

       iii.    Reverse False Claim

Plaintiff's third cause of action alleges a reverse false claim. 31 U.S.C. § 3729(a)(1)(G). (Dkt. 1 ¶¶ 79–82.) To state a reverse false claim, a relator must allege

14

that "the defendant did not pay back to the government money or property that it was obligated to return." *United States ex rel. Quinn v. Omnicare*, 382 F.3d 432, 444 (3d Cir. 2004). As a general matter, federal programs require the return of "identified . . . overpayments." *See* 42 C.F.R. § 401.305. But Plaintiff's reverse false claim fails for the same reasons as its presentment and records claims—it has not alleged any false claim that needed to be repaid. *See United States ex rel. Rector v. Bon Secours Richmond Health Corp.*, 2014 WL 1493568, at *11 (E.D. Va. 2014) ("Without any false claims identified as the source of money that should have been repaid to the Government, [plaintiff] has failed to particularize or adequately allege a reverse-false-claims violation."); *United States ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc.*, 972 F. Supp. 2d 1317, 1329 (N.D. Ga. 2013) (where false and reverse-false claims are "two sides of the same coin," the same analysis applies). Without alleging a false claim or overpayment, Plaintiff fails to set forth a viable claim in Count III.[4]

---

[4] Plaintiff alleges that Northwestern "misrepresents its testing location to fraudulently bill private insurers at the much higher rates associated with hospital labs." (Dkt. 36 at 15; Dkt. 1 ¶¶ 66–68.) Plaintiff fails to cite to any legal authority justifying its contention that such practice is fraudulent. (Dkt. 36 at 1, 2, 15.) Defendant refers to federal statute and facts justifying the billing practice as legal. (Dkt. 33 at 10 (citing 42 U.S.C. § 13951(h)(5)(A)(iii)). Both Northwestern's Motion to Dismiss and Reply brief raises the potential forfeiture of Defendant's claim for lack of factual and legal support. (Dkt. 33 at 10; Dkt. 37 at 10.) Plaintiff does not respond with any factual or legal support. (*See generally* Dkt. 36.) The Seventh Circuit has repeatedly held that "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived . . . ." *Williams v. Bd. of Educ. of City of Chicago*, 982 F.3d 495, 511 (7th Cir. 2020), *reh'g denied* (Jan. 7, 2021). The Court thus dismisses the FCA claim relying on testing location.

      iv.      FCA Conspiracy (Count IV)

To state an FCA conspiracy claim, a relator "must allege (1) that the defendants had an agreement to defraud the government by getting a false or fraudulent claim allowed or paid; and (2) that the defendants did so for the purpose of obtaining or aiding to obtain payment from the government or approval of a claim against the government." *Suarez*, 2019 WL 4749967, at *15 (cleaned up). A relator "must also plead the underlying fraud with particularity." *Id.* (citation omitted). Largely for the reasons explained above with regards to Connance, both the failure to allege an FCA violation and the failure to allege with particularity an agreement with Connance to defraud the Government suffice to dismiss this claim.

      **C.**      **Violation of Illinois Insurance Claims Frauds Prevention Act**

Plaintiff's final cause of action alleges that Defendants violated the Illinois Insurance Claims Frauds Prevention Act. (Dkt. 1 at 27–28.) Plaintiff premises jurisdiction of this allegation on supplemental jurisdiction under 28 U.S.C. § 1367. (*Id.*) But because the Court presently dismisses the federal law allegations on which Count V relies for supplemental jurisdiction, the Court declines to exercise supplemental jurisdiction over Count V. *See* 28 U.S.C. 1367(c)(3). Count V is therefore dismissed without prejudice. *See Harvey v. Town of Merriville*, 649 F.3d 526, 532–33 (7th Cir. 2011).

**III.**    **CONCLUSION**

Defendants' motions to dismiss (Dkt. 29; Dkt. 32) are granted, and the Complaint is dismissed without prejudice. If Plaintiff believes it can correct the

16

pleading deficiencies identified above, it has until October 23, 2023 to file an amended complaint. If Plaintiff does not choose to replead, then the dismissal of Counts I, II, III, and IV will convert to being with prejudice.

SO ORDERED in No. 19-cv-00593.

Date: September 29, 2023

_____
JOHN F. KNESS
United States District Judge